

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

April 27, 2026

**By ECF**
The Honorable Colleen McMahon
United States District Judge
500 Pearl Street
New York, New York 10007

> **Re:**    ***United States v. Christopher B. Ferguson**, 26 Cr. 31 (CM)*

Dear Judge McMahon:

The Government respectfully submits this letter in advance of sentencing. A sentence within the Guidelines range of 0 to 6 months' imprisonment would be sufficient but not greater than necessary to serve the purposes of sentencing.

## I.  Offense Conduct

Christopher B. Ferguson, the defendant, created false books and records of Edison Nation, Inc. ("Edison Nation"), a publicly traded company for which he served as chairman and chief executive officer. Ferguson willfully and knowingly caused the submission of a falsified book, record, and account in response to an inquiry by the Financial Industry Regulatory Authority ("FINRA") in order to conceal the fact that Edison Nation had not, in fact, received a purchase order it previously announced publicly to investors. (PSR ¶ 6).

Edison Nation was a diversified consumer products business that, among other things, helped entrepreneurs bring new products to market. Beginning in March 2020, following the emergence of the COVID-19 pandemic, Edison Nation expanded its business to include products such as hand sanitizer and N95 face masks that were in high demand as a result of the pandemic. On April 16, 2020, Edison Nation issued a press release announcing that it had "received over $10 million in orders for the purchase of personal protective equipment," with those orders including products such as "gel-based hand sanitizer, liquid sanitizer, and protective masks . . . ." The company also filed its press release with the U.S. Securities and Exchange Commission (the "SEC") in a Form 8-K filing. (PSR ¶¶ 9-10).

Although Ferguson, codefendant Brian McFadden (a consultant working on behalf of Edison Nation), and others working for Edison Nation had discussed a $9 million hand sanitizer purchase with a potential buyer ("Buyer-1") earlier that month, two days before the issuance of the press release, Buyer-1 notified Edison Nation by email that Buyer-1 was "unable to proceed" with the transaction. That anticipated $9 million purchase order formed the basis of the majority of the over $10 million in orders subsequently announced in the company's April 16 press release. As a result, Edison Nation did not, in fact, have over $10 million in orders at the time the press release was issued and the Form 8-K was filed. On that same date, after the issuance of the press

release, Edison Nation's share price increased 197% by market open, and McFadden sold over 30,000 shares of Edison Nation stock, realizing approximately $75,207.70 more than he would have if he had sold before the issuance of the press release. (PSR ¶ 11).

On April 23, 2020—approximately one week after the press release issued—FINRA contacted Edison Nation to request that Edison Nation provide FINRA with, among other things, copies of the purchase orders supporting the $10 million in purchase orders referenced in the press release. (PSR ¶ 12).

On April 24, 2020, an employee of a company ("Company-1") that had recently placed orders for personal protective equipment with Edison Nation emailed Ferguson in response to a request from Ferguson for purchase orders. The employee stated that the employee had "sent over 4 [Purchase Orders] this morning for you and you should have more on Monday. We should easily be able to get you over $10M by Monday, April 27th." Ultimately, Company-1 placed only approximately $2.64 million in orders by April 27, 2020. (PSR ¶ 13).

Three days later, on April 27, 2020, McFadden asked a business associate at another company ("Company-2") to create a $9 million backdated purchase order for hand sanitizer. In response, Company-2 provided McFadden with the requested purchase order backdated to April 12, 2020 (the "Company-2 Purchase Order"). In the process of creating the Company-2 Purchase Order, McFadden and the associate at Company-2 exchanged a series of text messages. In those messages, McFadden told the associate at Company-2 that he needed "a major favor," asked the associate to send Company-2's logo, and told the associate, "[I] made [the purchase order] nice for you[.]  lol i'll send it back for your approval." The Company-2 Purchase Order was not a bona fide order. (PSR ¶ 14).

On April 28, 2020, Ferguson and McFadden knowingly caused the submission to FINRA of the Company-2 Purchase Order, along with a spreadsheet falsely listing the Company-2 Purchase Order as having been received on April 12, 2020. Then, on May 6, 2020, Ferguson and McFadden knowingly caused the submission to FINRA of a second email that included another copy of the Company-2 Purchase Order and contained false and misleading statements about the Company-2 Purchase Order, including that "[o]n  April 12, 2020, [Edison Nation] received a verbal order from [Company-2] for $9.0 million," that "[o]n April 13, 2020, [Edison Nation] received a[n] additional written purchase order from [Buyer-1] for $9.0 million for the exact same supply," that "[Edison Nation] did not have sufficient supply to fulfill both [Company-2]'s and [Buyer-1]'s purchase orders" and that "[a]s a result, and due to [Edison Nation]'s long business relationship with [Company-2], [Edison Nation] elected to fulfill [Company-2]'s purchase order and not fulfill [Buyer-1]'s purchase order." In truth, it was Buyer-1, not Edison Nation, that had elected not to proceed with the transaction, and Edison Nation had not received any order from Company-2 on or before April 12, 2020. (PSR ¶¶ 15-16).

## II.  Procedural History and Guidelines

On January 28, 2026, Ferguson voluntarily self-surrendered, waived indictment, and pled guilty, pursuant to a plea agreement, to the sole count of Information 26 Cr. 31 (CM), which charged him with falsification of books, records, and accounts, in violation of Title 15, United States Code, Sections 78m(b)(2), 78m(b)(5), and 78ff, and Title 17, Code of Federal Regulations,

Section 240.13b2-1; and Title 18, United States Code, Section 2. (PSR ¶¶ 1-2, 17). That count of conviction carries a maximum term of imprisonment of twenty years, a maximum term of supervised release of three years, a maximum fine of $5,000,000, and a $100 mandatory special assessment.  (PSR ¶¶ 78, 82, 87-88).

The plea agreement and the PSR agree on the Guidelines calculation. Pursuant to U.S.S.G. § 2B1.1(a)(1), because an offense under 15 U.S.C. § 78ff is referenced to U.S.S.G. § 2B1.1 and has a statutory maximum term of imprisonment of 20 years or more, the base offense level is 7. Pursuant to U.S.S.G. § 2B1.1(b)(1)(A), the offense level is not increased based on loss or gain. The loss in this matter is zero because the offense of conviction did not result in any reasonably foreseeable pecuniary harm (*i.e.*, no actual loss under Note (C)(i) to the Loss Table under U.S.S.G. § 2B1.1(b)(1)), nor did Ferguson purposely seek to inflict pecuniary harm (*i.e.*, no intended loss under Note (C)(ii) to the Loss Table). Using the alternative method of gain, per Application Note 3(B), Ferguson did not profit or attempt to profit from the conduct, so there is not quantifiable gain. Pursuant to U.S.S.G. § 2B1.1(b)(20)(A)(i), because the offense involved a violation of securities laws and, at the time of the offense, Ferguson was an officer or a director of a publicly traded company, 4 levels are added to the offense level. Pursuant to U.S.S.G. § 3E1.1(a), 2 levels are subtracted for acceptance of responsibility. Pursuant to U.S.S.G. § 4C1.1(a), because Ferguson meets all of the criteria set forth in U.S.S.G. § 4C1.1(a)(1)-(11), the offense level is decreased by 2 levels. Accordingly, the applicable Guidelines offense level is 7, and, with zero criminal history points, Ferguson is in Criminal History Category I, which results in a Guidelines range of 0 to 6 months' imprisonment. (PSR ¶¶ 22-31, 34, 79, 81).

Probation recommends a sentence of 3 years' probation. (PSR p. 24). Ferguson seeks a sentence of probation. (Dkt. 18 at 2).

## III.  Discussion

The combination of the nature and circumstances of the offense, the history and characteristics of Ferguson, the needs for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, and to afford adequate deterrence to criminal conduct, and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, weighs in favor of a sentence within the Guidelines range of 0 to 6 months' imprisonment.

A Guidelines sentence is necessary to reflect the seriousness of the offense and to provide just punishment. Ferguson and McFadden caused the submission of falsified records from a publicly traded company of which he was the CEO in response to an inquiry from FINRA, a self-regulatory organization important to ensuring the integrity of the securities markets. Edison Nation claimed to have over $10 million in orders, and when FINRA—in an effort to protect investors, other professionals, and the markets—requested documentation to support that claim, Ferguson and McFadden caused the company to submit falsified documents. That is serious conduct deserving of punishment.

A Guidelines sentence is also necessary to promote respect for the law and to afford adequate deterrence to criminal conduct, especially for society generally. Other CEOs of public

companies must understand that submitting falsified records to regulatory bodies will be met with consequences.

The Court should also consider aspects of Ferguson's history and characteristics and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. Unlike McFadden, who profitably traded after the press release was issued (PSR ¶ 11), "Ferguson did not profit or attempt to profit from this offense, which," as Probation observed, "is a mitigating factor" (PSR p. 24).

## IV.   CONCLUSION

The Government respectfully requests that the Court impose a sentence within the Guidelines range of 0 to 6 months' imprisonment.

Respectfully submitted,

JAY CLAYTON
United States Attorney

by: *Samuel P. Rothschild*

Nicholas W. Chiuchiolo
Maggie Lynaugh
Samuel P. Rothschild
Assistant United States Attorneys
(212) 637-1247 / 2448 / 2504

cc:   Bradley J. Bondi, Esq. (by ECF)
Sara E. Ortiz, Esq. (by ECF)
Samuel M. Deau, Esq. (by ECF)